# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Case No. 22-31018-CLH |
| | Chapter 13 |
| JAMES DAVID NORTHINGTON, | |
| Debtor. | |
| _____ | |
| GULFCO OF ALABAMA, LLC D/B/A TOWER LOAN OF PRATTVILLE, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 22-03025 |
| JAMES DAVID NORTHINGTON, | |
| Defendant. | |

**MEMORANDUM OPINION**

On August 2, 2023, this adversary proceeding came before the Court for trial on the Complaint filed by Plaintiff, Gulfco of Alabama, LLC d/b/a Tower Loan of Prattville ("Tower") against Defendant, James David Northington ("Northington"). For the reasons set forth below, the Court finds that the debt owed by Northington to Tower is not excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(2)(C)(i)(I) and will enter a separate judgment in favor of Northington.

**I. Jurisdiction**

This Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1409. This is a

core proceeding under 28 U.S.C. § 157(b)(2)(I). The judgment entered concurrent with this opinion is a final judgment.

## II. Facts and Procedural History

### A. Uncontested Facts

On May 16, 2023, the parties submitted a Proposed Joint Pretrial Statement that contained stipulations of fact (Doc. 24). At trial, the parties agreed to the admission into evidence of all exhibits attached to their respective pre-trial disclosures. As such, most of the facts are uncontested.

During late February or early March 2022, Tower pre-approved Northington, without his knowledge, for a loan in the amount of $6,014.99 based on his credit and his track record of repaying earlier loans from Tower.[1] Shortly thereafter, Northington received an unsolicited mailing from Tower containing a "live check" for $6,014.99. Plaintiff's Exhibit 1. The mailing stated: "Because of your excellent credit and your status as a Tower Loan preferred customer, we are pleased to send you the attached 'Loan at Home' loan check made out in your name. This is a real check, and it can be cashed anywhere you would normally cash a check." *Id*. Under the terms of the agreement included in the mailing (the "Live Check Loan"), endorsing and depositing the live check obligated Northington to repay the $6,014.99 over twenty-seven months at 29.99% interest with monthly payments totaling $309.00. *Id*.

In early 2022, Northington's former girlfriend left him and withdrew insurance proceeds from a joint bank account. Northington had intended to use the insurance proceeds to pay for a new roof installed by Blue Bird Roofing for approximately $17,000.00. On March 7, 2002,

---

[1] At trial, the parties further stipulated that Tower's pre-approval process used to assess Northington's eligibility under the "Loan at Home" program was the same process used in *Gulfco v. Mock (In re Mock)*, 2022 WL 17418615 (Bankr. M.D. Ala. Dec. 5, 2022).

Northington met with an attorney, Charles E. Grainger, Jr., to discuss bankruptcy and non-bankruptcy options. Northington endorsed and cashed the live check on April 22, 2022, but did not deposit the funds until May 16, 2022. Northington again met with Mr. Grainger on May 31, 2022, and provided the information and documentation necessary to file a bankruptcy petition, but he decided not to file at that time.

On June 13, 2022, Blue Bird Roofing served Northington a summons and complaint on a breach of contract claim related to the new roof. After receiving the summons and complaint, Northington authorized Mr. Grainger to file a Chapter 13 bankruptcy petition on his behalf. Northington did not make any payments on the Live Check Loan prior to filing the underlying Chapter 13 petition on June 13, 2022, which was fifty-two days after he cashed the live check and twenty-eight days after he deposited the funds into his bank account.

### B. Contested Facts

The only factual dispute involves Northington's state of mind when he cashed the live check. Tower asserts that Northington had no intention to repay the Live Check Loan because he consulted with Mr. Grainger more than a month prior. Northington claims that he had every intention to repay the Live Check Loan, and that he did not decide to file a bankruptcy petition until he was served with Blue Bird Roofing's complaint on June 13, 2022.

### C. The Bankruptcy Filing & Adversary Proceeding

Northington filed his Chapter 13 petition on June 13, 2022. He listed Tower on Schedule D as a secured creditor with a debt of $6,014.00 secured only by a 19-inch HP touchscreen laptop having a value of $150.00. Tower filed an unsecured claim for $6,332.62 on August 9, 2022. Northington's Chapter 13 plan (the "Plan") proposed to treat all but $150.00 of Tower's claim as unsecured. The Plan further proposed payments of $2,120.00 per month for 58 months, with

unsecured creditors sharing $10,600.00 pro rata. The Court confirmed the Plan on September 29, 2022.

Tower filed the instant adversary proceeding on September 13, 2022. In its Complaint, Tower alleges that the debt associated with the Live Check Loan should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because Northington obtained credit from Tower under false pretenses, a false representation, or actual fraud. Tower also alleges that the debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(C)(i)(I) as a debt used to acquire luxury goods or services aggregating more than $725 within 90 days before the filing of the bankruptcy petition. Northington timely filed his Answer, denying Tower's allegations and asserting a collateral estoppel affirmative defense because Tower "pre-screened" Northington for the Live Check Loan. In his prayer for relief, Northington also requested attorney fees for defending the adversary proceeding.

At trial, Tower was represented by Ben Mayer, and Northington was represented by Mr. Grainger. The Court heard testimony from Northington and arguments from Mr. Mayer and Mr. Grainger. The Court found Northington to be credible and forthright. The parties agreed to limit the scope of the analysis under 11 U.S.C. § 523(a)(2)(A) to false representations and false pretenses.

### III. Legal Analysis and Conclusions of Law

**A. The Live Check Loan is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).**

Tower alleges that the Live Check Loan is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) of the Bankruptcy Code[2] provides, in relevant part:

> (a) A discharge under [ . . . ] this title does not discharge an individual debtor from any debt–

---

[2] All references to the Bankruptcy Code are to Title 11 of the United States Code.

- 4 -

[ . . . ]

(2) for money, property, services, or an extension, renewal, or refinancing of creditor, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). Under applicable Eleventh Circuit case law, to except a particular debt from discharge under § 523(a)(2)(A), a creditor must prove that "(1) the debtor made a false representation with the intention of deceiving the creditor, (2) the creditor relied on the false representation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the false representation." *Taylor v. Wood (In re Wood)*, 245 Fed. Appx. 916, 917-18 (11th Cir. 2007) (citing *Sec. & Exch. Comm'n v. Bilzerian (In re Bilzerian) (Bilzerian II)*, 153 F.3d 1278, 1281 (11th Cir. 1998)).

The standard of proof under § 523(a)(2)(A) is a preponderance of the evidence. *Sec. & Exch. Comm'n v. Bilzerian (In re Bilzerian) (Bilzerian I)*, 100 F.3d 886, 892 (11th Cir. 1996); *see also Grogan v. Garner*, 498 U.S. 279, 291 (1991) (holding § 523 actions are determined by a preponderance of the evidence standard). However, "'exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.'" *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1345 (11th Cir. 2021) (quoting *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997)).

"A false representation typically requires an express misrepresentation by a debtor to an issuer of credit." *Acceptance Loan Co. v. Christopher (In re Christopher)*, 578 B.R. 842, 848 (Bankr. S.D. Ala. 2017) (citing *Matter of Johnson*, 2017 WL 1839159 at *8 (Bankr. N.D. Ala. May 5, 2017)). Conversely, false pretenses "includes any intentional fraud or deceit practiced by whatever method in whatever manner." *FCC Nat'l Bank v. Gilmore (In re Gilmore)*, 221 B.R.

864, 872 (Bankr. N.D. Ala. 1998). "It is 'a series of events, activities [,] or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor.'" *Id.* (quoting *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996)).

"Section 523(a)(2)(A) does not mention reliance in any form, and to the extent that reliance is required, it is as an element of actual fraud, false pretenses [,] or false representations that must be proven to prevent discharge of the debt." *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 284 (11th Cir. 1995). A creditor seeking to hold a debt non-dischargeable under § 523(a)(2)(A) must prove justifiable reliance, which "requires the creditor to act appropriately according to [its] individual circumstances." *Id.*

### i. Northington's repayment of prior Tower loans does not constitute a false representation or false pretenses on which Tower could have justifiably relied for purposes of § 523(a)(2)(A).

Tower asserts that Northington's endorsement of three prior live checks and his repayment of the loans associated with those checks constitute a false representation or false pretenses as to his ability and intent to repay the Live Check Loan. Tower argues that it justifiably relied on Northington's performance under the prior loans when it sent the $6,014.99 live check – unsolicited – to Northington.

This is not the first time this Court has encountered a complaint under § 523(a)(2)(A) in the context of a "live check" debt, and the facts presented in this adversary proceeding are strikingly similar to those in *Gulfco v. Mock (In re Mock)*, 2022 WL 17418615 (Bankr. M.D. Ala. Dec. 5, 2022). In *Mock*, the debtor received an unsolicited live check for $4,001.81 with an attached letter and loan terms as part of Tower's "Loan at Home" program. *Mock*, 2022 WL 17418615 at *1. Aside from the dollar amount, the repayment terms, and the recipient, the

- 6 -

Case 22-03025  Doc 30  Filed 09/25/23  Entered 09/25/23 16:13:10  Desc Main
Document  Page 6 of 12

language of the live check and letter received by Northington is identical to the language on the live check and letter received by the debtor in *Mock*. *See id*.

In *Mock*, this Court found persuasive the reasoning in *Beneficial of Missouri, Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922 (Bankr. W.D. Mo. 1991). In *Shurbier*, the court rejected the plaintiff's treatment of live check loans as analogous to credit card usage:

> Reliance may be part and parcel to the ongoing relationship between the credit card issuer and the credit card user in that type of open-ended credit arrangement. But a loan is a discrete transaction. Even though Debtors had taken out and paid off other small loans from Beneficial in the past, nothing in their conduct in connection with those loans can be construed as a representation that they would repay any future unsolicited loans from Beneficial.

134 B.R. at 926. The Live Check Loan is a discrete transaction. Tower's decision to extend the Live Check Loan to Northington was based solely on Northington's credit report and Northington's prior loans from Tower. Northington did not apply for a new loan, and he would not have known about the possibility of obtaining the Live Check Loan had Tower not mailed the live check to him unsolicited. At the time Tower mailed the live check to Northington, it had based its decision to make the Live Check Loan on data gathered independently and without Northington's knowledge or direction. Accordingly, Northington's prior transactions with Tower cannot be "construed as a representation that [he] would repay any future unsolicited loans" from Tower, and its claim under § 523(a)(2)(A) fails. *Id*.

### ii. Northington's endorsement of the live check does not constitute a false representation or false pretenses on which Tower could have justifiably relied for purposes of § 523(a)(2)(A).

Tower claims that it justifiably relied on Northington's endorsement of the live check as a representation regarding his ability and intent to repay the Live Check Loan. As in *Mock*, Tower could not have relied – justifiably or otherwise – on Northington's endorsement of the live check for purposes of § 523(a)(2)(A). Tower faces the same immovable obstacle it faced in *Mock*: time.

As the *Shurbier* Court noted, "[a]bsent proof of [creditor]'s clairvoyant abilities, this Court is hard pressed to find that [creditor] relied upon a representation which occurred subsequent in time to [creditor]'s action of issuing the check." *Shurbier*, 134 B.R. at 925. For Tower to have relied on Northington's endorsement of the live check on April 22, 2022, Tower, prior to its unsolicited mailing to Northington, would have had to possess the ability to travel through time to April 22, 2022. As this Court held in *Mock*, reliance based on future events is both a logical and chronological impossibility. *See Mock* at *9. Unfortunately for Tower's claims under § 523(a)(2)(A), astrophysicist Neil deGrasse Tyson's observation holds true: "[w]e are prisoners of the present, in perpetual transition from an inaccessible past to an unknowable future."[3] As a result, this Court declines to "torture the elements of fraud to find reliance where it does not in fact exist." *Shurbier*, 134 B.R. at 926. Accordingly, Tower's claim fails under § 523(a)(2)(A).

**B. The Live Check Loan is not excepted from discharge under 11 U.S.C. § 523(a)(2)(C)(i)(I).**

Tower alleges that the debt associated with the Live Check Loan is non-dischargeable under 11 U.S.C. § 523(a)(2)(C)(i)(I). Section 523(a)(2)(C)(i)(I) of the Bankruptcy Code provides, in relevant part, that:

> (C)(i) for the purposes of subparagraph (A)–
>
> (I) consumer debts owed to a single creditor and aggregating more than $800 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable[.]

11 U.S.C. § 523(a)(2)(C)(i)(I). "[T]he term 'luxury goods or services does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor[.]" § 523(a)(2)(C)(ii)(II).

---

[3] Neil deGrasse Tyson, Twitter (now known as X), October 18, 2019.

Case 22-03025 Doc 30 Filed 09/25/23 Entered 09/25/23 16:13:10 Desc Main
Document Page 8 of 12

There is no dispute that the debt was incurred within 90 days preceding the Chapter 13 petition. However, the only evidence offered at trial were Northington's testimony and his bank statements. See Plaintiff's Exhibit 3. While there were numerous charges, they were for household expenses such as food, gasoline, recurring bills, utility bills, and other household purchases. The largest charge was approximately $314.00 for a Tempur Pedic purchase, and there were only two other purchases exceeding $200.00, both at local stores such as Wal-Mart. Nothing indicates that these purchases were for luxury goods or services. Because Tower has failed to establish that Northington spent the live check funds for anything other than necessary household expenses, much less luxury goods or services, the Court finds that Tower has not met its burden. Accordingly, Tower's claim fails under 11 U.S.C. § 523(a)(2)(C)(i)(I).

### C. Northington is not entitled to attorney's fees under 11 U.S.C. § 523(d)

In his Answer, Northington requested attorney's fees for defending this adversary proceeding. Section 523(d) of the Bankruptcy Code provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of the section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceedings if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). Under 11 U.S.C. § 523(d), there are five requirements for an award of attorney fees: (1) the creditor must bring a dischargeability complaint under § 523(a)(2); (2) the debt at issue must be a consumer debt; (3) the debt must be found to be dischargeable; (4) the creditor's position was not substantially justified; and (5) there are no special circumstances that would render an award of attorney's fees unjust. *See Beneficial of Missouri, Inc. v. Shurbier*, 134 B.R. 922, 927 (Bankr. W.D. Mo. 1991). In a similar context, the Supreme Court has defined "substantially justified" as "justified in substance or in the main—that is, justified to a degree that

could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 566 (1988) (internal quotation marks omitted). "A creditor is not substantially justified when it proceeds to trial knowing that it lacks sufficient evidence to sustain its burden of proof and then fails to establish a single necessary element of its claim." *Manufacturers Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 220 (N.D. Ill. 1987). A defendant shall be awarded attorney fees for defeating a non-dischargeability complaint under 11 U.S.C. § 523(a)(2) "if [the Court] finds that the creditor's position [wa]s not substantially justified." *Capitol Chevrolet v. Bullock (In re Bullock)*, 322 B.R. 176, 179 (Bankr. M.D. Ala. 2005). To defeat a request for attorney's fees, a "creditor must show that it has a 'reasonable basis in both law and fact.'" *Id*. (quoting *First Deposit Nat'l Bank v. Mack (In re Mack)*, 219 B.R. 311, 314 (Bankr. N.D. Fla. 1998)).

There is no dispute that: Tower brought a non-dischargeability complaint related to the Live Check Loan; the debt evidenced by the Live Check Loan is a consumer debt; and, as set forth above, the debt associated with the Live Check Loan is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A). The only remaining questions are whether Tower's position was "substantially justified" and, if not, whether special circumstances exist that would render an award of attorney's fees to Northington unjust.

The Court finds that Tower's position was not substantially justified. As this Court noted in Part III.A.i., *supra*, this is not the first time Tower has brought an action under 11 U.S.C. § 523(a)(2)(A) for a debt stemming from an unsolicited live check. This Court's Memorandum Opinion in *Mock* clearly stated that, for purposes of 11 U.S.C. § 523(a)(2)(A), there can be no reliance for unsolicited live check debts. Tower was aware of this Court's holding in *Mock* and was aware that the facts of this case were nearly identical. Despite this awareness, Tower filed this adversary proceeding. Because of this, Tower's position was not substantially justified.

The question then becomes whether there are any special circumstances that render an award of attorney's fees in favor of Northington and against Tower unjust. Based on Tower's arguments at trial and the questions asked of Northington during Tower's examination, it appears that Tower believed this case was distinguishable from *Mock*, such that Northington's acceptance and successful repayment of three prior "Loan at Home" loans constituted a representation on which it could justifiably rely for purposes of 11 U.S.C. § 523(a)(2)(A).

This Court addressed this issue directly in *Mock*, rejecting the argument that the prior history of transactions between the plaintiff and defendant could be considered a representation on which the plaintiff could rely, given that a loan is a discrete transaction. *See Mock* at *8. However, in *Mock*, the Court also explored in detail each element under 11 U.S.C. § 523(a)(2)(A), not just reliance. While the Court does not believe *Mock* supports Tower's hypothesis that the factual differences in the case at bar would lead to a different result, the Court is inclined to give Tower the benefit of the doubt. For the sake of clarity, the Court now states in no uncertain terms its position that it is impossible for a plaintiff in an action under 11 U.S.C. § 523(a)(2)(A) to establish reliance on a debt resulting from an unsolicited live check, whether through prior transactions, endorsement of the check itself, or a combination thereof.

Because the Court is willing to give Tower the benefit of the doubt as to its theory that there existed a possible distinction from *Mock*, the Court finds special circumstances that render an award of attorney's fees unjust. As such, Northington's request for attorney fees under 11 U.S.C. § 523(d) is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Tower has failed to meet its burden to establish that Northington obtained the live check funds through false representations or false

pretenses.  Therefore, the live check debt is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).  The Court further finds that Tower failed to meet its burden to establish that such funds were used to purchase luxury goods or services.  Therefore, the live check debt is not excepted from discharge under 11 U.S.C. § 523(a)(2)(C)(i)(I).  Additionally, the Court finds that Northington is not entitled to attorney's fees pursuant to 11 U.S.C. § 523(d) for defending this adversary proceeding.  Accordingly, the Court will enter a separate Final Judgment in favor of Defendant, James David Northington declaring that the debt made the subject of the Complaint is dischargeable but denying Northington's request for attorney's fees.

Done this 25th day of September, 2023.

Christopher L. Hawkins
United States Bankruptcy Judge

c: Kent D. McPhail, Attorney for Plaintiff
Charles E. Grainger, Jr., Attorney for Defendant